# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | | |
|---|---|---|
| **COREY L. MOSES** | : | **CRIMINAL ACTION 3:11-cr-124** |
| **B.O.P. #94948-038** | | **CIVIL ACTION 3:16-cv-894** |
| **VERSUS** | : | **JUDGE JAMES** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the Court is a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [doc. # 139] and a Motion for Leave to Amend same [doc. # 158], filed by petitioner Corey L. Moses ("Moses"). For reasons stated below, his motion for Leave to Amend is DENIED and it is recommended that his motion to Vacate, Set Aside, or Correct Sentence be **DENIED**.

## I.
### BACKGROUND

### A. *Conviction*

Moses was pulled over for speeding in Sterlington, Louisiana, on or about December 9, 2010. [Doc. # 110, p. 17]. As identification he initially provided a birth certificate and claimed that his name was Rar'terrus Lovett. [*Id.*]. However, after officers obtained a photograph of Rar'terrus Lovett, Moses admitted to his real identity. [*Id.* at 17–18]. Officers searched his vehicle, recovering four one-ounce packages of marijuana inside a boot in the trunk of the car, a loaded .380 caliber pistol in the back seat, and two nine millimeter pistols under the driver's seat.

-1-

[*Id.* at 18–19]. Moses told the officers that he was taking the marijuana to sell in Rhode Island or Connecticut. [*Id.* at 20–21].[1]

On May 27, 2011, a federal grand jury returned a three-count indictment charging Moses with possession of a firearm by a convicted felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); possession with intent to distribute marijuana, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1) (Count 3). [Doc. # 1].

Moses was arraigned on March 18, 2013, at which time Assistant Federal Public Defender Betty Marak was appointed to represent him. [Doc. # 13]. In May 2013, privately retained counsel enrolled on Moses's behalf and Marak withdrew from representation. [Docs. # 23–25]. However, these attorneys withdrew the following month due to Moses' inability to pay the agreed upon legal fees, and the matter was referred to the Federal Public Defender's Office for appointment of counsel from the CJA panel. [Docs. # 32, 33]. Attorney Charles Kincade then enrolled on Moses' behalf. [Doc. # 34].

On November 5, 2013, Moses pleaded guilty to Count 1 of the indictment while reserving his right to go to trial on Counts 2 and 3, and the court ordered a pre-sentence investigation report ("PSR") pending the completion of trial. [Doc. # 53]. Moses ultimately pleaded guilty to Count 2 as well, and this plea was accepted by the court on February 21, 2014. [Docs. # 69, 76]. At a sentencing hearing on July 22, 2014, Moses made an oral motion to withdraw his guilty plea, which the court rejected. [Docs. # 90, 91]. The court reviewed objections to the PSR, ruling on them with written reasons assigned, and then sentenced Moses to a 120 month term of

---

[1] The above factual basis is drawn from the testimony Special Agent Robert Johnson with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who was assigned to the case and testified at Moses's plea hearing on second count of the indictment. [*See* doc. # 110, p. 16]. Moses's counsel offered disagreement to other points of Johnson's testimony, relating to Moses's criminal history and the status of the firearms, but did not dispute the elements of the offense. [*Id.* at 23].

imprisonment on Count 1 and a 60 month term of imprisonment on Count 2, with the second term to run concurrent to the first. [Docs. # 91, 95]. The court also granted the government's motion to dismiss Count 3 of the indictment. [Doc. # 98].

### B. Direct Appeal

Moses filed a timely notice of appeal. [Doc. # 101]. After permitting the withdrawal of Charles Kincade, the court appointed Brian Landry to represent Moses on appeal. [Docs. # 104, 105]. Landry filed two *Anders* briefs,[2] and Moses submitted objections to both, raising the following claims:

1. The court erred when it denied his motion for new counsel without an evidentiary hearing.
2. The court erred by not allowing him to argue his own objections to the PSR.
3. The court erred when it determined that his Louisiana burglary conviction was a crime of violence and that the firearms he possessed were stolen.
4. The PSR treated specified prior convictions improperly.
5. The court erred when it denied his motion to withdraw his guilty plea.
6. The court imposed a procedurally and substantively unreasonable sentence.
7. The court erred when it relied on the PSR's determination that his Louisiana burglary conviction was a crime of violence when it adopted the PSR without resolving the factual dispute over whether he had conflict-free counsel in the Louisiana conviction.
8. The court erred in imposing the conditions of supervised release.

*United States v. Moses*, No. 14-30886, docs. # 86, 100 (5th Cir. 2016). The Fifth Circuit ruled on February 2, 2016, determining that the record was not sufficiently developed to support an evaluation of Moses's ineffective assistance claims, and so declining to consider those "without prejudice to collateral review."[3] [Doc. # 137]. It then concluded that there was "no nonfrivolous

---

[2] In *Anders v. California*, 386 U.S. 738 (1967), the Court set out standards for a court-appointed attorney wishing to withdraw from representation of a client in a direct criminal appeal because the case "lacks an issue of arguable merit." *United States v. Flores*, 632 F.3d 229, 231 (5th Cir. 2011). The attorney must conduct a "conscientious examination" of the case, and then request the court's permission to withdraw while submitting a brief identifying "anything in the record that might arguably support the appeal." *Id.* (quoting *Anders*, 386 U.S. at 744).

[3] Although Moses did not raise a distinct ineffective assistance claim, the substance of his claim relating to withdrawal of the guilty plea rested largely on the alleged inadequacy of his representation. *Moses*, No. 14-30886, at doc. # 100, pp. 3–5. He also complained of ineffective assistance under Claim 2, relating to the court's refusal to allow him to enter objections to the PSR *pro se*. *Id.* at doc. # 86, pp. 9–11.

issue for appellate review" and dismissed the appeal as frivolous. [*Id.*] Moses did not file a petition for writ of *certiorari* in the United States Supreme Court. [Doc. # 139, p. 2].

### C. *Instant Motion*

Moses filed the instant motion on June 14, 2016. [*Id.* at 13]. Here he raises the following grounds for relief:

1. The Louisiana burglary conviction should not have been used as a crime of violence to enhance his sentence.
2. Defense counsel rendered ineffective assistance during pretrial stages, at sentencing, and in failing to move to withdraw guilty plea in a timely manner.
3. The guilty plea was not made knowingly and voluntarily.
4. He did not receive full credit for time served prior to sentencing.
5. The court lacked subject matter jurisdiction over him because the firearms were no longer "in and affecting commerce."

[*Id.* at 4–8, 14].[4] On April 27, 2017, he filed a Motion for Leave to Amend the instant Motion to Vacate, seeking to argue additional reasons why his burglary conviction could not qualify as a crime of violence.

## II.
### LAW AND ANALYSIS

### A. *Motion for Leave to Amend*

Federal Rule of Civil Procedure 15, which handles amendments to pleadings, applies to motions filed pursuant to 28 U.S.C. § 2255. *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009). Under that rule, a district court may deny a petitioner's motion to amend when such amendment would be futile, even when amendment would normally be allowed as a matter of course. *Id.* at 681. Futility is governed by the same standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

---

[4] Moses also makes a single-sentence assertion of ineffective assistance on direct appeal. [Doc. # 139-1, p. 6]. To the extent that he intended this assertion as a separate claim, it is waived for failure to adequately brief it. *United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007).

The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief. The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* (alterations and internal citations and quotations omitted).

Moses first seeks leave to amend in order to raise a claim based on the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016). There the Court reviewed whether a "modified categorical approach"[5] could be used by a district court in reconciling a state burglary conviction under a statute that set out alternative means of completing an element of the offense with the generic definition of burglary, for the purpose of determining predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). 136 S.Ct. at 2247–48.

Moses argues that he is entitled to relief under *Mathis* based on the fact that his 1997 conviction for simple burglary of an inhabited dwelling qualified as a predicate offense. [Doc. # 158, pp. 1–2]. The burglary conviction was counted as an enhancement under the career offender provisions of the Sentencing Guidelines, U.S.S.G. §§ 4B1.1 and 4B1.2(a) (2013) (defining "burglary of a dwelling" as a qualifying "crime of violence"), and not the ACCA, 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. [Doc. # 99, p. 8; doc. # 95, p. 3]. However, the Fifth Circuit has since decided that *Mathis* can be construed generally as clarifying "when and how the modified categorical approach is applied in the context of federal sentencing." *United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016). Thus, while the Fifth Circuit has recognized use of the modified

---

[5] In order to determine whether a prior conviction qualifies as a predicate offense under the ACCA, courts generally apply a "categorical approach," asking "whether the elements of the offense . . . sufficiently match the elements of the generic (or commonly understood) version of the enumerated crime." *Mathis*, 136 S.Ct. at 2245 (citing *Taylor v. United States*, 495 S.Ct. 575, 600–01 (1990)). Under a "modified categorical approach," the court is permitted to look "at a limited class of documents from the record of a prior conviction to determine what crime, with what elements, a defendant was convicted of." *Id.*

categorical approach as appropriate in some instances under the Guidelines, *Mathis* is controlling and provides new guidance.[6] *Id.* at 574–75.

Even if *Mathis* is retroactively applicable on collateral review, it would not show that the enhancement was improper. Moses was convicted of simple burglary of an inhabited dwelling, which is defined under Louisiana law as:

> the unauthorized entry of an inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein . . . .

LA. REV. STAT. § 14:62.2. The language of the statute clearly shows that he is guilty of the offense described under the Guidelines as "burglary of a dwelling." U.S.S.G. § 4B1.2(a) (2013); *see United States v. Myles*, 423 Fed. App'x 442, 444–45 (5th Cir. 2011) (unpublished); *United States v. Davis*, 141 F.3d 1164 (5th Cir. 1998) (per curiam) (unpublished). Moreover, there is no call for departing from a categorical approach to this offense, as the alternatives are clearly means rather than elements. *See* note 6, *infra*; *see also United States v. Melancon*, 2016 WL 5661769 (M.D. La. Sep. 29, 2016) (applying the categorical approach to the same offense post-*Mathis*). However, even under a modified categorical approach, Moses shows no error to the enhancement. The description from the PSR indicates that Moses broke into an inhabited house and stole various items of electronics and jewelry. [Doc. # 99, p. 10]. Moses offers no objection to this characterization of his conduct. Under either a categorical or modified categorical approach, it is clear that the enhancement was appropriate. Accordingly, *Mathis* does not provide him with a claim for relief.

---

[6] *Mathis* instructs the court to first resolve the question of whether the disjunctive elements in a statute are elements or means. 136 S.Ct. at 2256. If they are elements, the court "should do what we have previously approved" and apply a modified categorical approach. *Id.* If, however, they are means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution" and must abide by the general rule that the state statute does not qualify as a predicate offense if its elements are more broadly drawn than those of the generic crime. *Id.*

Moses also seeks to amend in order to allege that the enhancement was improper due to the removal of burglary from the enumerated list of crimes of violence by subsequent amendment to the Guidelines. [Doc. # 158, pp. 1–2]. In 2016, the Sentencing Commission amended the definition of a "crime of violence" under the career offender enhancement of the Guidelines by eliminating the residual clause and removing burglary from the list of enumerated offenses that satisfied that definition. U.S.S.G. Supp. to App'x C, amend. 798 (Aug. 1, 2016).

Sentencing courts generally consider the Sentencing Guidelines in effect at the date of sentencing. *United States v. Huff*, 370 F.3d 454, 465 (5th Cir. 2004); *accord* U.S.S.G. § 1B1.11(a). Courts are only required to consider subsequent amendments to the Guidelines "to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2). Amendment 798, insofar as it relates to the removal of "burglary of a dwelling" from a list of offenses qualifying as crimes of violence, is clearly a substantive rather than clarifying change and therefore not retroactively applicable.[7] *United States v. Johnson*, 665 Fed. App'x 788, 793 (11th Cir. 2016).

It is plain that Moses could prove no set of facts showing a right to relief under the claims he attempts to raise in this motion. Accordingly, his Motion for Leave to Amend is denied as futile.

### B.  *Motion to Vacate*

---

[7] A recent decision of the Sixth Circuit construes the amendment as a clarifying change. *United States v. Kennedy*, -- Fed. App'x ---, 2017 WL 1078552, *7–*8 (6th Cir. Mar. 22, 2017). However, that ruling dealt with a change under the amendment to the way prior offenses involving firearm possession were listed. *Id.* As the Sentencing Commission noted, "[t]his addition is consistent with longstanding commentary in § 4B1.2 . . . and therefore **maintains the status quo**." U.S.S.G. Supp. to App'x C, amend. 798, p. 130 (Aug. 1, 2016) (emphasis added). Meanwhile the Sentencing Commission discussed the deletion of burglary of a dwelling from the list of enumerated offenses as the result of considering "several studies and analyses" and determining that, based upon three factors, the crime should no longer be considered a crime of violence. *Id.* at 129–30. Accordingly, *Kennedy* is clearly distinguishable and therefore of no persuasive value.

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[8] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). Furthermore, the collateral challenge process of § 2255 is no substitute for appeal. This is neither a statutory nor constitutional requirement, but instead a "doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). As a general rule, thus, "claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice for his failure," or actual innocence. *Id.* (citations omitted); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). While it is generally the government's responsibility to raise the issue of procedural default, the court may still impose the bar *sua sponte*. *United States v. Willis*, 273 F.3d 592, 596–97 (5th Cir. 2001). However, this should not be done without first considering whether the defendant has been given notice of the issue and had opportunity to

---

[8] The following claims are authorized under § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose the sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

argue against application of the bar, and whether the government has intentionally waived the defense. *Id.* at 597 (citing *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

### 1. *Louisiana burglary conviction's use for sentence enhancement*

Moses first complains of the court's use of his state burglary conviction at sentencing. He divides this challenge into two arguments: a claim based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. —, 135 S.Ct. 2551 (2015), and a contention that the state burglary conviction relied on a broader definition of burglary than the generic definition.

### a. *Johnson claim*

Moses first alleges that the use of his burglary conviction for a sentence enhancement was improper under *Johnson v. United States*, where the Court concluded that the residual clause of § 922(g) of the ACCA was unconstitutionally vague.[9] Thus the claim falls within the scope of § 2255. The government contends that the claim is barred because it was raised and disposed of on appeal. Moses did complain of the use of his burglary conviction for a sentence enhancement on appeal. *See Moses*, No. 14-30886, doc. 86, pp. 11–13. However, the argument there was based on a claim that the burglary statute itself was overbroad. *Id.* Here it is instead based on a Supreme Court decision issued while Moses's appeal was pending, giving him a potential argument for cause for his failure to raise the issue on appeal.[10] *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("[A] claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default.") (quotations omitted). Still, Moses cannot demonstrate prejudice, as there is no merit to the underlying claim.

---

[9] New constitutional rules of criminal procedure apply retroactively in collateral attacks only in limited circumstances. *Teague v. Lane*, 489 U.S. 288, 310 (1989). However, the Supreme Court has already recognized that *Johnson* is retroactively applicable on collateral review. *Welch v. United States*, 136 S.Ct. 1257 (2016).

[10] *Johnson* was decided on June 26, 2015. As stated above, Moses raised his claims for direct review in his first and second responses to appellate counsel's *Anders* briefs. Moses does not specify the dates he mailed his responses, but they were received and filed in the Fifth Circuit on July 13 and October 19, 2015, respectively. *Moses*, No. 14-30886, docs. # 86 & 100.

Moses's base offense level was set at 20 under § 2K2.1(a)(4) of the United States Sentencing Guidelines. [Doc. # 95, pp. 3–4]. This provision applies when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The two prior felonies noted in the PSR were a 2007 Rhode Island conviction for possession of a firearm during a violent crime and a 1997 Louisiana conviction for simple burglary of an inhabited dwelling, though the court ultimately granted the defendant's objection and disregarded the Rhode Island conviction. [Doc. # 99, p. 6, doc. # 95, pp. 3–4].

At the time of Moses's sentencing, a crime of violence was defined under § 4B1.2(a) of the Guidelines to include among the several specified offenses "burglary of a dwelling," as well as a residual clause embracing any  offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. §§ 2K2.1 cmt. 1, 4B1.2(a)(1) n. 1 (November 2013); *see, e.g.*, *United States v. Stoker*, 706 F.3d 643, 647 (5th Cir. 2013) (labeling the residual clause). Thus, the residual clause of § 4B1.2 is not implicated. Furthermore, the Supreme Court recently determined that *Johnson* had no application to the Sentencing Guidelines, and that the Sentencing Guidelines were not subject to vagueness challenges under the Due Process Clause. *Beckles v. United States*, 137 S.Ct. 886, 891–97 (2017). Therefore this claim fails the cause and prejudice test, and is procedurally barred from review. However, even if Moses's failure to raise the issue on appeal were excused, the claim is plainly without merit and would not entitle him to relief under § 2255.

### b.  Other challenge

Moses also challenges the use of the conviction as a crime of violence for Guidelines purposes, alleging that it relied on an overbroad definition of burglary and that the government

did not provide any information with which the trial court could determine if the elements of generic burglary were met by the offense. As the government notes, this claim was raised and rejected on appeal and is therefore barred. [*See* Doc. # 137; *Moses*, 14-30886, at doc. # 86, pp. 11–13].

### 2.  *Ineffective assistance*

Moses next claims that he received ineffective assistance from Kincade.[11] Although he did not brief a distinct ineffective assistance claim on appeal, he did make allegations of ineffective assistance under various claims in his opposition to appellate counsel's *Anders* briefs. Ineffective assistance claims may be brought for the first time in a collateral proceeding under § 2255 regardless of whether the defendant raised the issue earlier. *Massaro*, 538 U.S. at 505–09. Therefore review of this claim does not require a determination of whether the ineffective assistance allegations raised here were also raised in the direct appeal.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 466 U.S. at 687. A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one. *Id.* at 697.

---

[11] Although Moses made some mention of ineffective assistance in his direct appeal, the Fifth Circuit concluded that "[t]he record is not sufficiently developed to allow us to make a fair evaluation of [those claims]" and therefore declined to consider them "without prejudice to collateral review." [Doc. # 137, pp. 3–4]. Thus, contrary to the government's assertion, the claims are not barred as decided on appeal.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88. In this review courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95). In the context of a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Allen*, 250 Fed. App'x 9, 12 (5th Cir. 2007) (unpublished) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Here Moses alleges that Kincade failed to properly investigate the charges, lied to Moses about the procedure for withdrawing a guilty plea, and failed to submit certain letters at sentencing.[12] [Doc. # 139-1, pp. 16–18].

### a.  *Failure to investigate*

---

[12] He also alleges cursorily that counsel failed to "research[] the law or sentencing guidelines" or "do legal research and draft requested motions." [Doc. # 139-1, p. 19]. These allegations are too general to be evaluated under either of *Strickland*'s prongs.

Adequate investigation is a necessary part of effective assistance. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). To maintain an ineffective assistance claim based on failure to investigate, a defendant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). While counsel's failure to interview a witness identified as crucial might indicate an inadequate investigation, "the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983) (citing *Gray*, 677 F.2d at 1093 n. 5). When the failure to investigate amounts to a failure to locate and produce a witnesses, a defendant cannot demonstrate prejudice unless he shows that the witness's testimony would have been favorable and that the witness would have been willing to testify on the defendant's behalf. *Lockhart v. McCotter*, 782 F.2d 1275, 1282–83 (5th Cir. 1986); *see also Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (noting that the court looks "with great caution" on ineffective assistance claims where the only evidence of a missing witness's testimony is from the defendant).

Furthermore, a defendant's testimony in open court carries a "strong presumption of verity," and so the defendant bears a heavy burden in showing that his plea was involuntary after he has testified to its voluntariness. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). As the government points out, a guilty plea waives all pre-plea complaints except those relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Therefore Moses's allegation relating to counsel's failure to investigate is only cognizable to the extent that this alleged failure rendered his guilty plea involuntary, and his admissions to the factual bases

for the pleas must be weighed against his claims of what further investigation might have yielded.

The transcripts from Moses's plea hearings shows that he admitted to the elements of the offenses, and that he understood that his pleas waived his rights to go to trial on these matters and test the state's evidence. [Docs. # 110, 120]. Moses now alleges that Kincade rendered deficient performance and induced his guilty plea by failing to interview two key witnesses – Antonio Lovett, the owner of two of the firearms, and Shasta Vurtuki, the owner of the vehicle. [Doc. # 139-1, p. 17]. Lovett, Moses contends, would have rebutted allegations that Moses stole the firearms and that they were used in connection with the marijuana offense.[13] Meanwhile, he alleges that Vurtuki, who was apparently at the scene, would have refuted the government's contention that he gave incriminating statements and consented to the search of his vehicle on the night of the arrest. [*Id.* at 16–18; doc. # 163, p. 9].

The only evidence that Moses alleges investigation of these witnesses might have yielded is their own testimony. Therefore this is, in essence, a claim of failure to produce witnesses. However, Moses makes no showing of either witness's availability or that their testimony was in fact beneficial. Even assuming that failure to interview the witnesses was deficient performance, Moses cannot demonstrate adequate prejudice in satisfaction of *Strickland*'s second prong.

### b.  *Withdrawing guilty plea*

Moses next alleges that Kincade performed deficiently because he first told his client that guilty pleas could not be withdrawn until appeal, "but after much persistence . . . told [him] that the time to withdraw was on the day of sentencing." [Doc. # 139-1, p. 18]. Moses then contends that Kincade failed to adequately prepare for the motion. [*Id.* at 18–19].

---

[13] These factors were not an element of the convictions, but did lead to enhancements at sentencing. [*See* doc. # 99, p. 7; doc. # 95].

A criminal defendant may withdraw his guilty plea before sentencing if he provides a fair and just reason. FED. R. CRIM. P. 11(d)(2)(B). The Fifth Circuit sets forth the following factors for the district court to consider on a motion to withdraw a guilty plea:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991) (citing *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984)). However, the court is not required to make findings on each factor, and "[t]he burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant." *Id.* at 104.

Kincade, on Moses's behalf, made an oral motion to withdraw the guilty plea on the day of sentencing. [*See* doc. # 113]. The motion was based on the fact that the Sterlington Police Department was unable to recover its video recording of the traffic stop. [*See id.* at 7–14]. The defense contended that this revelation was grounds for withdrawing the guilty plea, as they had repeatedly asked whether there was a tape and been told that there was not one – not, as the officer's testimony revealed, that there was footage but that it could not be recovered. [*Id.* at 34–36]. After hearing testimony from one of the Sterlington police officers and argument, the court denied the motion, citing *United States v. Badger*, *supra*. In support of the ruling the court made the following remarks:

> Having heard the evidence today, the Court is of the opinion that even – first, that all of this was known before the second plea, essentially, the crux of it; second, that there is no evidence of intentional wrongdoing on anyone's part; thirdly, even . . . if the defendant has the benefit of all this, he would not change anything that would be offered at trial by the Government. Basically, the defendant knew what the Government's case was when he entered the plea.

[Doc. # 113, pp. 37–38]. Thus, although delay was cited as a factor for the court's ruling, it rested in larger part on the fact that the non-existence of the video versus the inability to recover the video made no difference to the government's case. Even if counsel had brought the motion earlier, Moses shows no basis for concluding that better preparation would have yielded additional support for his motion.[14] Accordingly, he cannot satisfy *Strickland*'s second prong under this claim.

### c. *Failure to submit letters at sentencing*

Finally, Moses alleges that Kincade failed to submit a letter from Antonio Lovett, who, as owner of the two pistols, purportedly disavowed that Moses had stolen the firearms. Moses also alleges that Kincade failed to submit character letters from Moses's friends and family.

Defense counsel filed numerous objections to the presentence report, challenging several of the proposed enhancements. [Doc. # 99, pp. 23–27]. He objected to the stolen firearm enhancement, alleging that the weapons were not stolen. The government provided the following response: "Moses admitted to stealing the two 9 mm pistols. Even if he had not admitted such, Antonio Lovett verified to the West Monroe Police Department the guns had been stolen from him." [*Id.* at 24]. As the government also noted, pursuant to the Sentencing Guidelines, the enhancement applies whether or not the defendant knew that the firearms were stolen. *See* U.S.S.G. § 2K2.1, cmt. 8(B). The court denied the objection, noting that it had already heard

---

[14] Moses alleges that the uncalled witnesses under the previous claim would have provided grounds for a suppression hearing and established that he was actually innocent of the sentencing enhancements, thereby supporting his reasons for withdrawing the plea and proceeding to trial. [*See* doc. # 139-1, pp. 18–19; doc. # 163, pp. 7–10]. As noted above, this contention is implausible due to Moses's failure to show any proof of these witnesses' accounts. He also contends that expert witnesses or further investigation of police policies and procedures could have shown intentional wrongdoing in the police's inability to recover the tape. [*Id.*] However, this allegation is vague and conclusory, and therefore provides no support for his claim.

testimony from the arresting officer who took Moses's incriminating statements and from the West Monroe police officer who interviewed Antonio Lovett.[15] [Doc. # 95, pp. 4–5].

Moses provides no copy of the letter from Lovett, which he believes would have swayed the court's opinion on the issue of whether the firearms were stolen despite the testimony of two law enforcement officers and Lovett's apparent unwillingness to take the stand. Additionally, he does not provide the letters from family and friends or describe their contents. Even if he could show that counsel received these letters and refused to submit them, he cannot demonstrate any likelihood that submitting same would have changed the outcome of his sentencing. Accordingly, this claim does not satisfy *Strickland*'s second prong.

Moses does not show merit to any of his ineffective assistance claims, and is therefore not entitled to relief on that basis.

### 3. *Voluntariness of Guilty Pleas*

Moses next challenges the voluntariness of his pleas, alleging that Kincade grossly underestimated his sentence based on an erroneous belief that the burglary conviction would be thrown out. He also contends that, because he was unaware of the unrecoverable video described above, he did not know of potential credibility challenges to the arresting officer or for a claim that the government had withheld exculpatory/impeaching evidence.

### a. *Video evidence*

The government alleges that this portion of the claim is procedurally barred due to Moses's failure to raise it on direct appeal. Moses did challenge the court's denial of his motion

---

[15] Jacob Greer, the arresting officer, testified at the sentencing and stated that Moses had admitted that the two nine millimeter pistols were stolen from his cousin, Antonio Lovett. [Doc. # 113, pp. 18–19]. Greer stated that he then contacted the West Monroe Police Department, and that they confirmed this report after checking with Lovett. [*Id.* at 19]. Tommy Gonzales, a West Monroe police officer, then testified that he had been contacted by Greer about the pistols. [*Id.* at 40]. Gonzales stated that he interviewed Lovett, and that Lovett confirmed that the guns had been taken from his home without his permission at some point shortly before Moses's arrest. [*Id.* at 40–46]. Accordingly, Lovett filed a report with the West Monroe Police Department after that interview, alleging that the pistols were stolen. [*Id.* at 43].

to withdraw guilty plea in his supplemental *Anders* opposition. *Moses*, No. 14-30886, at doc. # 100, pp. 3–5. However, he did not challenge the voluntariness of his plea except for an assertion of ineffective assistance within that claim, which this court has already considered *supra*. *Id.* at 4. As cause he offers only that he thought he had to wait for collateral review to bring this claim, and he makes no claim of actual innocence. [Doc. # 139, p. 7]. Ineffective assistance of appellate counsel satisfies the cause and prejudice standard, but the movant must still demonstrate the error. *See United States v. Garza*, 176 F.3d 479 (5th Cir. 1999). As noted *supra*, Moses made a cursory assertion of ineffective assistance by appellate counsel but failed to make any showing in support. Assuming, therefore, that the mistake in believing that this claim must be reserved for a collateral attack was his own, this court has no basis for regarding his ignorance of the law as sufficient cause to avoid a procedural default. Therefore this claim is barred from review.

### b.  *Sentencing promise*

As stated above, Moses did not allege at trial or on appeal that the guilty plea was involuntary because of a promise by Kincade relating to his sentence. Namely, he alleges that Kincade promised him that he would receive only a two to the three year term of imprisonment, and that his burglary conviction would not count for a sentence enhancement. [Doc. #139-1, pp. 19–20]. The government does not contend that this portion of the claim should be procedurally defaulted. However, it is clear that Moses can show no merit to the allegations. Therefore there is no need to explore whether this court should impose the bar *sua sponte* or whether the claim was actually intended as an ineffective assistance claim and thus not subject to procedural default.

As noted above, a defendant's sworn admissions in open court carry a "strong presumption of verity." *Deville*, 21 F.3d at 659. In order to show that a plea was involuntary, contrary to his representations and based on unkept promises, the defendant must prove "(1) the

exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). A defendant is entitled to an evidentiary hearing on this issue if he can produce "independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties." *Id.* However, no hearing is required where the defendant's showing "is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of the other evidence in the record." *Id.* (citations omitted).

Moses acknowledged in both of his plea agreements that his sentence was subject to the maximum penalties, of which he was apprised; that his sentencing range under the Guidelines could not be determined until the completion of a pre-sentence investigation; that the sentencing judge alone would decide what sentence to impose; and that the failure of the court to adhere to a sentencing recommendation could not justify setting aside the plea. [Doc. # 55, pp. 3, 5; doc. # 75, pp. 3, 5]. He affirmed his understanding of these provisions in open court at his plea hearings. [Doc. # 110, pp. 14–15; doc. # 120, pp. 14–15]. In support of his claim that Kincade made contrary promises on his sentencing range, he offers only his own self-serving account attached as affidavit to this motion. [*See* doc. # 139-2]. In light of his admissions in open court and his signature on the plea agreements, his allegations under this claim are not to be credited.

### 4. *Sentencing credit*

Moses next claims that he is being denied sentencing credit for time served prior to his conviction. This claim focuses on the execution of his sentence, rather than its validity or the legality of his conviction. Therefore it is not cognizable under § 2255 and should instead be brought in a habeas corpus petition under 28 U.S.C. § 2241. *United States v. Gabor*, 905 F.2d 76,

77–78 (5th Cir. 1990). A § 2241 petition must be brought in the district where the petitioner is incarcerated at the time of filing. *Id.* at 78 (citing *Blau v. United States*, 566 F.2d 526, 527 (5th Cir. 1978)). Moses's current address indicates that he is at the Federal Correctional Institute in Yazoo City, Mississippi. Thus, if he wishes to seek relief under this claim, he must file a § 2241 petition in the United States District Court for the Southern District of Mississippi.

### 5. *Subject matter jurisdiction*

Finally, Moses alleges that the court lacked subject matter jurisdiction to sentence him, as he disputes the court's finding under 18 U.S.C. § 922(g)(1) that the firearms involved in his offense had traveled in interstate commerce. It does not appear that Moses attempted to raise this error on appeal. Although the government does not argue that the claim is procedurally defaulted, this court may still invoke the procedural bar *sua sponte*. However, as with the preceding claim, there is no need to explore whether such imposition is appropriate, as there is clearly no merit to the claim.

Moses's firearm possession conviction arose under 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Moses does not dispute that the firearms were manufactured outside of Louisiana and traveled to the state through channels of interstate commerce.[16] Instead, he argues that the weapons' connection with interstate commerce was too tenuous, or that they had lost their interstate character by remaining in Louisiana.

---

[16] Robert Johnson, the Bureau of Alcohol, Tobacco, Firearms, and Explosives agent assigned to the case, testified at the plea hearing for the firearm possession charge. [*See* doc. # 120, pp. 16–23]. He stated that an interstate nexus report was made on all three guns involved in the case, and showed that they had all been manufactured outside of the state of Louisiana and then traveled into the state. [*Id.* at 21]. These findings were incorporated into the PSR as part of the offense conduct. [Doc. # 99, p. 5].

The federal felon-in-possession statute is not focused on the depth of involvement in interstate commerce. As the Supreme Court noted in a discussion of § 922(g)(1)'s predecessor felon-in-possession statute, 18 U.S.C. § 1202(a), "Congress was not particularly concerned with the impact on commerce except as a means to insure the constitutionality of [the statute]." *Scarborough v. United States*, 431 U.S. 563, 575 n. 11 (1977); *see United States v. Fitzhugh*, 984 F.2d 143, 146 (1993) (analogizing § 922(g) and § 1202(a)). "[E]vidence that a firearm has traveled interstate at some point in the past is sufficient to support a conviction under § 922(g), even if the defendant possessed the firearm entirely intrastate." *United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002). Therefore Moses's disagreement with this element of his offense does not show a right to relief, and so his claim is plainly without merit.

### 6. *Entitlement to an evidentiary hearing*

Moses has requested an evidentiary hearing under various claims. The court must grant a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *e.g.*, *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). No evidentiary hearing is required where the defendant's claims are "either contrary to law or plainly refuted by the record." *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989). Furthermore, "[c]onclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). A defendant must present "independent indicia of the likely merit of [his] allegations" to show that he is entitled to a hearing on his § 2255 motion. *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)).

Moses's claims are entirely based on conclusory and unsubstantiated allegations and his own self-serving account, which contradicts his prior sworn admissions. He shows no factual

support for the improbable scenarios asserted above, and the filings and record demonstrate that he is not entitled to relief. Therefore no hearing is required.

**Conclusion**

For the reasons set forth above, the Motion for leave to Amend [doc.# 158] is **DENIED**, and **IT IS RECOMMENDED** that the Motion to vacate, set aside, or correct sentence, [doc. #139 ], filed by Defendant Corey Moses, be **DENIED**. Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days**

from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

**THUS DONE** this 3rd day of July, 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE